EZEKIEL M. BARTLETT, Respondent, *v.* ABRAM S. MATSON, Appellant.

### February 14, 1876.

1. In cases not within the statute of frauds the consideration need not be expressed in a written contract, and, if not expressed, may be shown *aliunde*.

2. Where A shipped goods to B, upon the trust that he would sell them and apply the proceeds to the payment of notes of A, on which C was liable as accommodation acceptor, and B wrote to C, stating that he would apply the funds as agreed between himself and A, *held*, that, if B deposited the funds in bank to the credit of A, and the bank neglected to apply them to the payment of the bills of A, on which C was liable as indorser, no cause of action accrued to C, B having deposited the funds according to the directions received from A.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

*F. F. Espenchied*, for appellant, cited : Chitty on Con. (7th Am. ed.) 15, 18, 53, 54 ; 22 Am. Jur. 16, 20 ; 1 Pars. on Con. 389, note *m* ; Exchange Bank *v.* Cookman, 1 W. Va. 69, 77.

*Fagg, Dyer & Emmons*, for respondent, cited : Wag. Stat. 270, sec. 34 ; Arms *v.* Ashley, 4 Pick. (Mass.) 71 ; Thompson *v.* Blanchard, 3 N. Y. 337 ; Davenport *v.* Mason, 15 Mass. ; Patchin *v.* Swift, 21 Vt. 297 ; Cummings *v.* Dennett, 26 Me. 399 ; Beven *v.* Burbanks, 16 Me. 160 ; Block *v.* Elliott, 1 Mo. 277 ; Halsa *v.* Halsa, 8 Mo. 307 ; 2 Kent. 465 ; 1 Pars. on Notes, 175, sec. 1 ; Marks *v.* Bank of Missouri, 8 Mo. 319 ; Wilson *v.* Sergeant, 12 Ala. 770 ; Lawrence *v.* Fox, 20 N. Y. 268 ; Rogers *et al. v.* Gosnell, 58 Mo. 591. Myers *v.* Lowell, 44 Mo. 328 ; Rogers *v.* Gosnell, 51 Mo. 466 ; Berly *v.* Taylor, 5 Hill, 576.

BAKEWELL, J., delivered the opinion of the court.

It appears from the record in this case that plaintiff accepted a draft for $4,221.49 for the accommodation of the firm of Matson & Henderson, Louisana, Missouri, upon the agreement between himself and said Matson & Henderson, that they would make shipments of hogs to defendant in St. Louis, the proceeds to be applied to the payment of this draft, which had been deposited by the holder in the National Bank of Missouri for collection. After the acceptance of this draft by plaintiff, and after some of the hogs had been already shipped to defendant in accordance with the agreement between plaintiff and Matson & Henderson defendant (who was not a member of that firm) signed and delivered to plaintiff a written instrument purporting to be an article of agreement between plaintiff and defendant, which, after reciting that Matson & Henderson have shipped, and are to continue to ship, hogs to pay off said acceptance, concludes thus : " I agree to appropriate of the net proceeds, as far as it will go, to take up said acceptance. A. S. Matson." The acceptance matured on December 25th. On January 3d defendant rendered to Matson & Henderson

an account of sales of 306 hogs, showing a balance of $3,021.12 net, which he reports as deposited, that day, to their credit in the National Bank of Missouri. There was evidence, also, tending to prove that, on that day, he went to the bank with these net proceeds, handed them to the teller, with a copy of the so-called agreement between himself and plaintiff, telling him to apply these funds according to the terms of that paper; the teller examined the paper, took the money, and the defendant heard no more of it until he was subsequently informed that the bank had appropriated only $1,486.24 of this money to the acceptance of plaintiff, and applied the balance to another acceptance of Henderson & Matson then in the bank; that, upon learning this, defendant saw the officers of the bank and endeavored to have the error corrected, but they refused to make any change. These statements as to transactions between defendant and the bank are uncontradicted; unless it should be claimed that the report of sales by defendant to Matson & Henderson, with its accompanying statement that the $3,021.12 was that day by him deposited to their credit in the bank, is inconsistent with the testimony of a special direction to the officers of the bank to apply the fund to the payment of this particular draft.

Plaintiff sues defendant herein for failure to perform the alleged agreement to appropriate all the net proceeds of the hogs to the payment of the draft; and says that, by reason of this failure, there was left unpaid on said draft the sum of $1,213.20, which plaintiff paid on February 13, 1872. He lays his damages at $2,000. There was a verdict and judgment in the court below for $1,757.40; and defendant, having unsuccessfully moved to set the same aside, brings the case to this court by appeal.

The court, at the instance of plaintiff, granted an instruction to the effect that, if defendant, on a state of facts substantially as they have been set forth above, placed the net proceeds, $3,021.20, to the credit of Matson & Henderson

at the National Bank of the State of Missouri, having pre-
viously entered into an agreement with plaintiff to appro-
priate said proceeds to the payment of the draft accepted
by plaintiff, then plaintiff is entitled to recover the differ-
ence between the amount deposited and the amount credited
on the draft.

Also the following:

"Although the jury may believe from the evidence that,
at the time defendant made the deposit at the National
Bank of the State of Missouri, he told the officers of said
bank for what purpose he desired the amount deposited
appropriated, that does not relieve the defendant from his
obligation to the plaintiff, if you shall find that he agreed
to appropriate the same to the taking up of the draft drawn
on plaintiff by F. C. Todd."

To the giving of these instructions defendant excepted.

The court, at the instance of defendant, gave the fol-
lowing instruction:

"If it appears from the evidence that the defendant took
the whole net proceeds of his sale of hogs under the con-
tract sued on to the bank mentioned in the contract, and
directed the officer of said bank receiving the money to
apply it according to the terms of said contract, a copy
whereof was then and there exhibited to said officer for that
purpose, and the bank having in its possession the draft
shown in evidence, then the defendant is not liable for a
misappropriation of such money by the bank, and the
plaintiff cannot recover therefor."

Defendant asked the following instruction, which was
refused, and defendant excepted:

"If it appears that the draft drawn by Todd & Bartlett
in favor of Matson & Henderson, and accepted by Bart-
lett, was placed by the holder in the National Bank of the
State of Missouri for collection, and that defendant was
informed of the fact by the plaintiff at the time of the
making of the contract sued on, then the said bank, for all

the purpose of this suit, was the agent of the holder of the draft, and of the plaintiff so far as he was interested in its collection, and if there was any failure by said bank to properly apply the money paid by defendant for application to said draft, then the defendant is not responsible to the plaintiff therefor, and the latter cannot recover in this action.''

This last instruction was warranted by the evidence, and is a correct statement of legal principles. Defendant could not take up the draft, because the funds in his hand were insufficient; and if, in obedience to his instructions, he paid the money into the bank, with directions to apply it upon plaintiff's draft, his responsibility was at an end. The refusal of this instruction necessitates the reversal of the case; and, as a new trial must be had, we will look into the other questions presented by the record.

The contract sued on expresses no consideration, it is said, and it is insisted that it was error in the court to admit it in evidence against the objection of the defendant, based upon the theory that it was not competent to show a consideration *aliunde*. But in this action of the court there was no error. It is clear, by the common law, that there must be a consideration for a written contract not under seal, and it is equally clear that this consideration need not be expressed in the written contract so as to make a part of it, but where none is expressed in an action on such a contract a consideration may be averred, and it may then be proved by oral evidence. In some of the States this rule has been held to apply even in cases within the statute of frauds; though the English rule is that, in cases within the statute, the consideration must be in writing. But where the contract need not be in writing, if reduced to writing, the consideration may be shown, though not expressed. This contract was not a contract to answer for the debt of another, and its consideration could, undoubtedly, be shown.

But does any consideration to support the contract

appear from all the evidence in the case? This is a question of some difficulty. The petition states the consideration to have been the shipment of hogs to defendant, and the acceptance of the draft by plaintiff; and it was proved that defendant knew of the promise of Matson & Henderson to ship the hogs to him to be sold to meet the draft, and of the acceptance by plaintiff. But the acceptance of the draft was not for defendant's benefit, who was in no way connected with Matson & Henderson; it had already taken place when the agreement was signed; and, as to the shipment of hogs, it does not appear to be a consideration moving from plaintiff, as he does not promise that the hogs shall be shipped. " You have accepted a draft for the accommodation of Matson & Henderson," writes defendant to plaintiff, in effect, " and they are shipping hogs to me to sell and pay the draft, and I will appropriate the net proceeds of the sale to that purpose." Does that written statement impose any legal obligation upon defendant which did not exist in full force without it? If not, the argument is not helped by the testimony outside of the writing; because, with all the testimony together, the alleged contract amounts to no more than this. We do not think that the writing helps the case at all; and, as the action is upon this instrument, a demurrer to the petition would have been fatal to the action in this form.

But, after verdict and judgment, it is too late to consider that, if, waiving the question of an express promise from defendant to plaintiff, enough facts are alleged and proved to warrant a recovery. If money is handed by A to B, for the use of C, and C consents to the trust, C may have an action for it. Now it clearly appears that these hogs were sent by Matson & Henderson to defendant, upon the trust that he would sell them and apply the net proceeds to the payment of the accommodation paper upon which plaintiff was liable as acceptor. Matson & Henderson could, therefore, have recovered from defendant if he had converted these funds

to his own use ; and to avoid circuity of action plaintiff
would, under these circumstances, have been subrogated
to the rights of Matson & Henderson, and might have
commenced suit in his own name so long, and only so long,
as a right of action remained to them. But he could not
sue if, the obligation of defendant to them being discharged,
Matson & Henderson could not ; and they clearly could
not, under the circumstances of this case, for there is no
question but that defendant either applied the whole money
to the payment of the acceptance of plaintiff, or else depos-
ited it in bank to the credit of Matson & Henderson, with
their knowledge and consent, and as to them he is fully
discharged. We think, then, that there is a total failure of
evidence to support the verdict, and that, on this ground,
the case should be reversed.

We have gone thus at length into the question of consid-
eration because upon that question the case seems really
to hinge. But the case must have been reversed on the
ground that the instructions are erroneous and furnish no
intelligible direction to the jury. In the second instruction
for plaintiff the jury are told that, if defendant agreed to
appropriate the money in question to taking up plaintiff's
draft, the fact that he told the bank officers to what pur-
pose to apply the money would not relieve him ; and in the
instruction of defendant they are told that, if defendant
gave the officers the directions detailed in the testimony as
to the application of the money, he is completely discharged.
These instructions cannot stand together. There is no ques-
tion that defendant paid in the whole money received to the
bank ; there is no question as to what directions were given
to the bank officers as to the application of the money, if
any directions were given at all, as to which, also, there seems
to be no reasonable doubt. The only possible question as
to the money is whether the statement on the account of
sale, " deposited by me this day at the National Bank to your
credit," is to be taken as contradicting the testimony that

special instructions were given to the bank officers by defendant, when depositing the money, as to the particular disposition of the fund. These two instructions are, therefore, not merely confusing, but quite irreconcilable, in view of the facts as presented by the record.

The judgment of the Circuit Court will be reversed and the cause remanded. Judge GANTT concurs; Judge LEWIS, having been of counsel, did not sit.